### In re ULRICH.
### In re SAUBER.
### Nos. 1828, 1950.

District Court, D. North Dakota.
March 1, 1943.

F. E. McCurdy, of Bismarck, N. D., for bankrupt.

A. L. Quilling, of St. Paul, Minn., for Federal Land Bank of St. Paul.

VOGEL, District Judge.

The question before the court in these cases is whether or not an original appraisal under Subsection s of Section 75 of the Bankruptcy Act, 11 U.S.C.A. § 203, sub. s, becomes final and binding on all parties for the purposes of redemption after the expiration of four months, with the exception only of either party being able to show upon reappraisal that there had been an appreciation or depreciation in value between the time of the original appraisal and the time of the reappraisal.

Subsection s provides: "* * * Such farmer may, at the same time, or at the time of the first hearing, petition the court that all of his property, wherever located, whether pledged, encumbered, or unencumbered, be appraised, and that his unencumbered exemptions, and unencumbered interest or equity in his exemptions, as prescribed by State law, be set aside to him, and that he be allowed to retain possession, under the supervision and control of the court, of any part or parcel or all of the remainder of his property, including his encumbered exemptions, under terms and conditions set forth in this section. Upon such a request being made, the referee, under the jurisdiction of the court, shall designate and appoint appraisers, as provided for in this title. Such appraisers shall appraise all of the property of the debtor, wherever located, at its then fair and reasonable market value. The appraisals shall be made in all other respects with rights of objections, exceptions, and appeals, in accordance with this title: Provided, That in proceedings under this section, either party may file objections, exceptions, and to take appeals within four months from the date that the referee approves the appraisal."

Paragraph (3) of Subsection s provides for reappraisal as follows: "At the end of three years, or prior thereto, the debtor may pay into court the amount of the appraisal of the property of which he retains possession, including the amount of encumbrances on his exemptions, up to the amount of the appraisal, less the amount paid on principal: Provided, That upon request of any secured or unsecured creditor, or upon request of the debtor, the court shall cause a reappraisal of the debtor's property, or in its discretion set a date for hearing, and after such hearing, *fix the value of the property, in accordance with the evidence submitted,* and the debtor shall then pay *the value so arrived at into court,* less payments made on the principal, for distribution * * *." (Italics for emphasis.)

The question raised will affect a large number of cases now pending before conciliation commissioners and before this court. The facts in the Ulrich case will serve as an example. In the Ulrich case the original appraisal was had on March 2, 1942. The amount of the appraisal was $960. The creditors made no objections, took no exceptions or appeals therefrom, and more than four months expired before the debtor made his petition to redeem. The debtor then petitioned for the right to redeem the real property at the appraised value, $960. Upon receiving notice thereof the creditors objected and requested a reappraisal or hearing on value in accordance with paragraph (3) of Subsection s, quoted above. Hearing on such petition was had on October 26 and 27, 1942, at which time the creditors and bankrupt presented evidence with reference to value, such hearing being before the Commissioner. The Commissioner found from such evidence that there had been no change in the value of the property between the date of the original appraisal and the date of the hearing on value, and held that all parties were bound by the value fixed at the time of the appraisal, he taking the position that the parties were limited in the hearing on value to a showing of appreciation or depreciation in value subsequent to appraisal, and that they could not attack the original appraisal as being improper after more than four months had expired subsequent to such appraisal. The Commissioner filed his memorandum opinion upon which he based his action. He adopted the theory that the reappraisal or hearing on value provided for in the law was only for the purpose of showing an increase or decrease in values, not for the purpose of disturbing the ac-

tion of the appraisers after the four months' period had expired. He took the position that any other view or interpretation of the law would work an extreme hardship upon the bankrupt who, he claims, had a right after the expiration of four months from the appraisal to rely upon such appraisal as being final, to make his plans therefor, and to pay such amount into court. He claims that to hold otherwise would put to naught the action of the court and the appraisers in complying with the provisions of the law with reference to the first appraisal, and would make such action a nullity and completely useless.

■ The law as drawn by Congress is not clear, as evidenced by the fact that we have diversity of opinion with reference to its interpretation. That being true, it becomes the duty of the courts to construe Congressional intent so that it can be administered with practicality and also with complete fairness to bankrupts and creditors. In the Ulrich case it is claimed by the creditors that the valuation placed on the land by the appraisers, namely $960, is grossly inadequate and far below the fair and reasonable market value of the property. They take the position that no onus rested upon them to attack the appraisal either by objections, exceptions or appeal, or to do anything with reference thereto, until there had been evidenced an intention on behalf of the bankrupt to redeem the property involved. There is support for such position.

"It would be a useless act to request a reappraisal before the debtor indicated an intention to redeem the property, and the court would not, in fact, order it. If the debtor does not redeem the property, it will be sold at public auction and hence there would be no necessity for a reappraisal." In re Kolbe, D.C.N.D.Ohio W.D. 1942, 43 F.Supp. 803, 805.

As pointed out, the Commissioner is of the opinion that such interpretation would work hardship upon the bankrupt, but it is, indeed, a rare rule of bankruptcy law which does not work some hardship, and it is the duty of the courts to attempt to administer the law so that the least hardship will be invoked.

Let us view the other side of this proposition. If the theory of the bankrupt, as expounded by the Commissioner in his memorandum, is to be adopted, then every creditor who finds fault with the original appraisal must immediately, or within four months from the date of such appraisal, challenge the correctness thereof. Hearings must be held, witnesses produced, testimony taken, and, in the event of review or appeal, the testimony transcribed. In a great many instances such actions would be useless waste of time and money and would, to an exorbitant degree, burden the courts by fruitless hearings where there never was any intention on the part of the bankrupt to redeem certain of his property. In this District alone there are pending at the present time something over eleven hundred bankruptcies of this type, and that number is increasing daily. Did Congress mean that the creditors had to attack the original appraisal within four months or be bound thereby, regardless of any evidenced intention on the part of the bankrupt to redeem, and thus force the parties and the courts to such an amount of useless work, expense and effort? If not, what, then, was the purpose of the first appraisal? Does it then become the nullity and waste of time referred to by the Commissioner? It seems to me that, aside from fixing the value of the property for the purposes of redemption, the first appraisal has other adequate justifications: First, it is properly used as a basis for the Commissioner's determination of the amount to be paid by the bankrupt as rent. Second, it is necessary in setting aside the bankrupt's exemptions. Third, it is a basis for the deposit which the bankrupt must make under the law at the time he asks for an order turning over to him the property in redemption. It will be seen, then, that the first appraisal is not a useless act or a nullity, but actually becomes a necessity to any proper administration. The fact that the property may increase or decrease in value between the time of the original appraisal and the reappraisal is merely an additional reason for justifying the reappraisal, but it is not the sole justification.

■ Extreme situations must be used to test the practicality or the workability of any rule of law. For example, let us apply the bankrupt's theory in the instant case to an extreme set of facts. Let us assume that the original appraisal was for an exorbitantly large amount, far in excess of the fair and reasonable market value of the property. Let us assume that the bankrupt, being without funds and being bankrupt, felt that he would not be able to redeem the property within the

time provided for in the law and, accordingly, made no objections to the appraisal, and the four months' period subsequent thereto expired. Let us assume, further, that the bankrupt had two years of very extraordinarily good crops, with extraordinarily good prices, from which he was able to save a considerable amount, and that he was able to borrow additional funds, all of which totalled together would have made it possible for him to pay the actual fair and reasonable market value of the property, not the value as arrived at on the appraisal, which was far too high, but the actual fair and reasonable market value. Under the bankrupt's theory he could ask for a reappraisal, but at that reappraisal he would be able to show only depreciation in value, which depreciation must have occurred between the date of the appraisal and the date of the reappraisal, which, in the assumed instance, was nothing. Under the bankrupt's theory he would then be bound by the original appraisal. I cannot agree to such an interpretation. It seems to me that it would be grossly unfair to prevent such bankrupt from having the right to redeem at the fair and reasonable market value of the property as fixed by the reappraisal. The converse of that situation should certainly be true. If the original appraisal is far too low and represents only a small portion of the actual fair and reasonable market value, and yet there is no evidenced intention on the part of the bankrupt to redeem, the creditor should not be forced to attack the appraisal within the four months' period, nor until those contingencies provided for in paragraph (3) of Subsection s, namely the payment into court of the amount of the appraisal and attempt to redeem, have occurred.

I find no particular hardship to the bankrupt under such an interpretation. If the property in the first instance has been appraised at an amount far below its fair and reasonable value, the bankrupt should in his own mind be aware of that fact, and in good conscience should not expect to redeem the property at such figure. He could reasonably be expected to know that if he attempted to redeem for such an amount the creditors would take exceptions thereto and would exercise their rights as provided in paragraph (3) of Subsection s and demand a reappraisal or hearing on value.

I am, accordingly, of the opinion that the orders of the Commissioners should be set aside and that these cases should be remanded to the Commissioners with instructions to fix the values of the property in accordance with the evidence submitted at the valuation hearings. Orders will be so entered.